IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES JETER JR YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1064 |
| | ) | |
| L.R. HANSEN, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Plaintiff James Jeter Jr Young, an inmate in the North Carolina Department of Public Safety. His central allegations in this case are that Defendant L.R. Hansen, a police officer in Winston-Salem, North Carolina, improperly seized and searched his cellular telephones. Defendant filed a Motion for Summary Judgment [Doc. #28] which Plaintiff opposes.

I.  Allegations and Facts

Plaintiff's Complaint makes only sparse factual allegations. Plaintiff claims that Defendant seized his cellular telephones on a ramp to an interstate highway in Winston-Salem at approximately 10:00 p.m. on March 24, 2017. (Complaint [Doc. #2] § IV.) Plaintiff states that Defendant justified the seizure by stating that the phones might reveal evidence related to a crime. (Id.) In an attachment to the Complaint, Plaintiff adds an allegation that Defendant seized the phones without a warrant and without any information related to criminal activity. (Id., Attach.) He states that Defendant later procured a search warrant for the phones, but that the warrant was not executed within 48 hours, as required by the warrant, which renders

the search warrantless. (Id.) Plaintiff contends that the seizure and subsequent search of his phones violated his rights under the constitutions of both the United States and the State of North Carolina. (Id. § II(B).)[1] Based on this contention, he asserts a claim against Defendant in his individual capacity seeking damages in the amount of $50,000. (Id. §§ I(B), VI.)

In support of his Motion for Summary Judgment, Defendant filed an Affidavit (Defendant's Brief [Doc. #29], Attach. 1) with supporting exhibits. In that document, Defendant explains the circumstances that led to the seizure and search of Plaintiff's phones. On March 24, 2017, Defendant and another officer were conducting surveillance on a house where a heroin overdose had occurred the night before. (Id. ¶ 6.) They observed a vehicle enter the driveway and stay for a few minutes with the lights on and the driver (later determined to be Plaintiff) remaining in the car. (Id.) Defendant used the license tag to check the vehicle's records and discovered that the owner was deceased, the registration expired, and the insurance policy terminated. (Id.)

The vehicle left the residence and Defendant followed along with another officer, while radioing officers in the area to request assistance in stopping the vehicle for the insurance and registration violations. (Id. ¶ 7.) When the other officers were in place, Defendant stopped the vehicle on the ramp leading to eastbound Interstate 40. (Id.)

---

[1] Regarding Plaintiff's claims under the United States Constitution, Plaintiff cites the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments as having been violated. The facts of his claim clearly attempt to raise a claim under the Fourth Amendment, which covers searches and seizures, and the Fourteenth Amendment, through which the Fourth Amendment extends to the States. However, nothing in the Complaint implicates the Fifth (indictment, double jeopardy, self-incrimination, federal due process, taking of private property for public use), Eighth (cruel and unusual punishment, excessive fines and bail), or Ninth (reservation of rights not enumerated) Amendments.

Two men occupied the front seat of the stopped automobile and Defendant approached the passenger side of the car as another officer approached the driver's side. (Id. ¶ 8.) Defendant recognized the passenger, Christopher Martin, as the person who had reported the heroin overdose the night before. (Id. ¶ 9.) Defendant informed Plaintiff of the reason for the stop and requested his license and the vehicle registration. (Id.) When Plaintiff looked at Martin and indicated that he did not know the location of the registration, Defendant asked who owned the vehicle. (Id.) Martin stated that the vehicle belonged to his deceased mother and reached to open the glove box for the registration. (Id.) At that point, Defendant noticed "track marks" on Martin's arms, a sign of heroin use. (Id.) Martin also looked extremely thin, pale, and unhealthy, which Defendant believed typical of a heroin user. (Id. ¶¶ 10-11.)

Martin could not find the registration and Plaintiff, when asked a second time for a driver's license, admitted that he did not have one and produced a North Carolina identification card. (Id. ¶ 12.) Defendant asked Martin to step out of the vehicle, Martin complied, and Defendant asked if he was ok with talking to him, and Martin replied that he was. (Id.) Defendant asked him about the track marks, to which Martin answered that he used heroin and opiate pills. (Id.) After Martin consented to a search of his person for drugs, which revealed nothing, Defendant then asked for consent to search the vehicle, and Martin gave consent. (Id.) Defendant instructed another officer, Officer Ferguson, to have Plaintiff exit the vehicle so that the search could be conducted. (Id.) He thereafter heard something of a confrontation between Ferguson and Plaintiff and was informed shortly afterward that Ferguson had found a plastic bag of drugs on Plaintiff's person. (Id.) Plaintiff was then

3

arrested.  (Id.)  Defendant handcuffed Martin for officer safety and proceeded to search the vehicle.  (Id. ¶ 13.)  Defendant located half a bottle of tequila on the passenger side, drug paraphernalia belonging to Martin in the glove box, and three cellular telephones on the driver's seat.  (Id.)  After Martin told Defendant that the phones belonged to Plaintiff, Defendant seized them as evidence.  (Id.)

Defendant arrested Martin, who then waived his rights and consented to a search of his residence, which had been the house under observation after the overdose.  (Id. ¶¶ 14, 15.)  He advised that his cousin, Joshua Clifton, who had been the overdose victim the night before, was there.  (Id. ¶ 14.)  Officers transported Martin and Plaintiff back to the residence, where Clifton cooperated with the search.  (Id. ¶ 16.)  This uncovered drug paraphernalia and other evidence.  (Id.)  Officers transported Martin and Plaintiff to jail, where both men waived their right to remain silent and spoke with officers.  (Id. ¶¶ 18, 19.)  Martin stated that he loaned his vehicle to Plaintiff in exchange for heroin and that Plaintiff used the vehicle to distribute drugs throughout the city.  (Id. ¶ 18.)  He described Plaintiff as the "go-to guy" for heroin in Winston-Salem.  (Id.)  Plaintiff admitted to possessing the heroin found on his person and to being a heroin dealer.  (Id. ¶ 19.)  He stated that he procured heroin in Washington, D.C. and that he bought it $10,000 at a time, but refused to name the source of the heroin.  (Id.)

After the interviews, Defendant used the information to procure arrest warrants for Plaintiff and Martin.  (Id. ¶ 20.)  On April 7, 2017, Defendant also sought and received a search warrant allowing a search of Plaintiff's seized telephones.  (Id. ¶ 22.)  Defendant retrieved the phones from evidence storage and took them to a police investigator, who then searched them.  (Id. ¶¶ 24-26.)  Defendant thereafter returned the warrant to the issuing magistrate.  (Id. ¶ 27.)

4

That warrant is attached as an exhibit to both Plaintiff's Complaint and Defendant's Affidavit. It reflects that it was issued at 11:42 a.m. on April 7, 2017 and returned executed on that same day at 1:16 p.m. A box on the warrant is also checked indicating that the warrant was not executed within 48 hours of its issuance and that it was being returned unexecuted. Defendant states that the checking of this box was a mistake by "[s]omeone." (Id. ¶ 29.) Plaintiff later pled guilty to heroin trafficking charges. (Id. ¶ 30.)

II.     Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

5

III.   Discussion

   A.   Initial Traffic Stop

Plaintiff's Complaint does not appear to directly challenge the initial stop of the vehicle driven by Plaintiff. However, in his Response [Doc. #32] and Reply Brief [Doc. #34] to the Motion for Summary Judgment, Plaintiff does appear to raise such a challenge. He argues that Defendant did not have the requisite level of suspicion of criminal activity to make the stop and that the stop was really a pretext to attempt to discover contraband. This argument fails in short order. "The Fourth Amendment is satisfied if the officer's action [in stopping a vehicle] is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). Further, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). If such probable cause exists, it does not matter whether or not the stop is a pretext for further investigation as long as the scope of the stop is reasonable. Id. at 813; United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016) ("In assessing the legitimacy of a traffic stop, we do not attempt to discern an officer's subjective intent for stopping the vehicle.") Here, evidence not in dispute shows that Defendant observed the vehicle that Plaintiff was driving, checked it via its license tag, and determined that the owner was deceased, the registration expired, and the insurance policy terminated. This information concerning possible traffic violations provided more than sufficient probable cause for Defendant to make the initial stop to investigate the violations. See United States v. Walker, 575 F. App'x 146,

6

148 (2014); State v. Washington, 193 N.C. App. 670, 678, 668 S.E.2d 622, 627 (2008). Any claim otherwise by Plaintiff fails and should be denied.

      B.      Seizure of Plaintiff's Cellular Telephones

The next issue raised by Plaintiff is the legality of Defendant's seizure of his cellular telephones. He contends that Defendant did not have probable cause to seize the phones during the traffic stop and/or that he should have procured a warrant before seizing them. Again, his arguments quickly fail. Numerous courts have noted the strong connection between drug dealing and the potential presence of evidence of that dealing located on cellular phones possessed by the dealer or found near drugs. See United States v. Harris, Crim No. 3:15cr170, 2016 WL 1441382, at *12 (E.D. Va. April 11, 2016) (unpublished) (collecting cases), aff'd 688 F. App'x 223 (4th Cir. 2017), cert. denied, 138 S. Ct. 436 (2017). The link is even stronger where one individual connected to drugs possesses multiple phones. United States v. Peterson, Crim. Action No. 3:18-cr-90-JAG-1, 2019 WL 1793138, at *12 (E.D. Va. April 24, 2019) (unpublished). Here, the undisputed evidence shows that Defendant discovered the phones while conducting a search of the car pursuant to consent given by Martin, the car's owner, or at least the person with ultimate control of the car. Plaintiff does not set out any argument challenging Defendant's ability to search based on Martin's consent to the search. Further, by the time Defendant discovered the phones lying in the driver's seat of the car that Plaintiff had been driving, another officer had already discovered a bag of drugs on Plaintiff's person and Plaintiff was being arrested based on those drugs. Upon discovery of the phones by Defendant, Martin indicated that they belonged to Plaintiff. Defendant then had ample probable cause to believe that the phones might contain evidence of Plaintiff's drug dealing.

7

As for then seizing the phones without a warrant, this was also not improper, as it allowed Defendant to secure the phones "'to prevent destruction of evidence while seeking a warrant'" to search them. Harris, 2016 WL 1441382, at *12 (quoting Riley v. California, 573 U.S. 373, 388 (2014)). Importantly, Petitioner did not search the information on the phones without a warrant, which would have been improper under Riley. See Riley, 573 U.S. at 401-02 (holding that even a properly seized cell phone cannot ordinarily be searched without a warrant). As discussed next, Defendant did obtain such a warrant before conducting a search of Plaintiff's phones. His initial seizure of the phones did not violate Plaintiff's Fourth Amendment rights.

      C.      Search of Plaintiff's Cellular Phones

The last issue raised by Plaintiff is whether or not Defendant's search of the seized phones violated his constitutional rights. Plaintiff asserts that, although Defendant procured a warrant, he did not execute it within 48 hours of its issuance, and that the search of the phones was essentially warrantless. This bare assertion by Plaintiff is not supported by sufficient facts to survive summary judgment. Plaintiff's entire case rests on the box checked on the face of the warrant indicating that the warrant was not executed within 48 hours of its issuance and that it was, therefore, being returned unexecuted. This box stands in contrast to three other pieces of information present on the face of the warrant. One is a section of the warrant stating that the warrant "was received and executed as follows" with dates and times then entered indicating that the warrant was issued on April 7, 2017 at 11:42 a.m. and executed that same day at 1:16 p.m. The second is a handwritten statement immediately below that indicating that Defendant made a search of three cell phones. Third, the warrant is signed by the issuing state magistrate as being issued on April 7, 2017 and returned at 1:16 p.m. that

same day. Moreover, Defendant confirms that the search of the phones was indeed conducted as indicated in the more detailed portions of the warrant and that the check box indicating that the warrant was being returned unexecuted is an error. He provides further specific details concerning the conducting of the search pursuant to the warrant and the return of the warrant. Plaintiff provides no evidence on the matter and points to nothing beyond the check box supporting his allegations. In the circumstances, Plaintiff has failed to present a genuine issue of material fact sufficient to overcome Defendants Motion for Summary Judgment on this issue.

In Plaintiff's Reply Brief [Doc. #34], he raises one final argument by asserting that the search of his phones was invalid because he was not presented with a copy of the warrant before the search occurred. Even if true, this allegation does not support any claim for relief.

> The Fourth Amendment does not require an officer to serve a search warrant before executing it. See Groh [v. Ramirez], 540 U.S. [551] at 562 n. 5, 124 S.Ct. 1284. In fact, the Fourth Amendment is not offended where the executing officer fails to leave a copy of the search warrant with the property owner following the search, see United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000), or fails even to carry the warrant during the search, see Mazuz v. Maryland, 442 F.3d 217, 229 (4th Cir. 2006).

United States v. Hurwitz, 459 F.3d 463, 470 (4th Cir. 2006). Defendant's Motion for Summary Judgment should be granted as to Plaintiff's claims under the United States Constitution.

D.  Qualified Immunity

Defendant also raises the defense of qualified immunity. Qualified immunity shields government officials from liability for their conduct, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Based upon the findings above, the Court concludes that there are no material facts in dispute and that Defendant's conduct did not result in a violation of Plaintiff's constitutional rights with respect to the seizure and subsequent search of the cellular telephones. Even absent such a finding, Defendant's conduct was not clearly proscribed such that a reasonable person would have understood that his conduct violated Plaintiff's Fourteenth Amendment rights. His Motion for Summary Judgment should be granted for this additional reason.

E.  Claims Under the North Carolina Constitution

In addition to Plaintiff's claims under the United States Constitution, Plaintiff also attempts to raise a claim under the North Carolina Constitution against Defendant in his individual capacity. However, there is no direct cause of action against individual defendants under the North Carolina Constitution. Corum v. Univ. of North Carolina, et al., 330 N.C. 761, 787-88, 413 S.E.2d 276, 292-93 (1992); see also Love-Lane v. Martin, 355 F.3d 766, 789 (4th Cir. 2004). In addition, when analyzing search and seizure claims under the North Carolina Constitution, courts generally apply the same standards as are applied to Fourth Amendment claims under the United States Constitution. See e.g., Sunkler v. Town of Nags Head, No. 2:01-CV-22-H(2), 2002 WL 32395571 at *3 (E.D.N.C. May 17, 2002) (unpublished), aff'd 50 F. App'x 116 (2002); State v. Bromfield, 332 N.C. 24, 39, 418 S.E.2d

491, 499 (1992); State v. Arrington, 311 N.C. 633, 643-44, 319 S.E.2d 254 (1984). Therefore, even if Plaintiff could raise a claim under the North Carolina Constitution, it would fail for the same reasons set out above in relation to his federal claims. Defendant's Motion for Summary Judgment should be granted as to this claim as well.[2]

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #28] be granted and that this action be dismissed.

This, the 26th day of July, 2019.

                                                  /s/ Joi Elizabeth Peake
                                                  United States Magistrate Judge

---

[2] The Court also notes that, to the extent Plaintiff's claims may be an attempt to call his criminal convictions into question, the claims would be barred under Heck v. Humphrey, 512 U.S. 477 (1994), absent a showing that the convictions had been separately vacated.